OPINION
Appellant, Joni E. Domsitz, appeals the June 18, 2001 decision and judgment entry of the Franklin County Court of Common Pleas affirming the order of the Liquor Control Commission revoking appellant's liquor license. For the following reasons, we affirm.
Appellant owned and operated a bar known as Grills Tavern in Trotwood, Ohio. On December 29, 1999, at approximately 8:00 p.m., Agent Diane M. Corey and Officer Nichola Williams entered Grills Tavern. Agent Corey observed a male patron, who identified himself as Charles Prince, operating an upright Cherry Master video electronic slot machine. Between 8:30 p.m. and 8:40 p.m., Agent Corey observed the bartender, known only as "Tom," payoff Prince a total of $130 in cash. Tom paid Prince from an envelope that was kept behind the bar.
Also on that evening, Agent Corey observed a male patron, known as Terry M. Lemmons (aka "Lemmy"), enter the bar, obtain a pitcher of beer, sit down with two other patrons, and then proceed to walk out the back door to the patio. Ten minutes later, Agent Corey opened the back door leading to the patio, and smelled an odor of burnt marijuana. Agent Corey did not observe any drugs or drug paraphernalia in the hands of the patrons that were outside on the patio. Lemmons was not visible to Agent Corey, because he was behind the door with another patron, leaning against the wall.
On December 30, 1999, both Agent Corey and Officer Williams visited Grills Tavern again. While at the bar, Agent Corey observed the bartender, Tom, payoff an undetermined amount of money to a male patron, known only as "Dennis," who was playing the slot machine. Fifteen minutes later, Agent Corey saw Tom give Dennis $50 in cash.
On January 5, 2000, at approximately 8:45 p.m., Agents Corey and Rebecca L. Sterling, and Officer Williams entered Grills Tavern and sat at the bar. Two male patrons, Randall E. Pressel and Chet A. Pease, engaged the agents and officer in conversation. Agents Corey, Sterling and Officer Williams observed the slot machine on the counter at the west end of the bar. Agent Corey placed two $20 bills into the slot machine, and obtained credits to begin playing the game. Later, Agent Corey requested a cash payoff from the barmaid, Victoria "Vickie" E. Baggett. Baggett paid Agent Corey $30 total in cash as a payoff for the slot machine.
At approximately 9:20 p.m., Pressel approached the agents and the officer, and inquired if they wanted to smoke a joint with him. Agent Sterling and Officer Williams followed Pressel onto the patio. While on the patio, Pressel rolled a marijuana cigarette, and handed it to Officer Williams. Shortly thereafter, Agent Sterling, Officer Williams, and Pressel walked back into the bar.
At approximately 10:20 p.m., Lemmons entered the bar and engaged in conversation with Agents Corey, Sterling, and Officer Williams. At approximately 10:35 p.m., Pressel asked Agent Sterling to engage in smoking a marijuana cigarette on the patio. Agent Sterling, Officer Williams, Pressel, Lemmons, and Pease stepped out onto the patio. Once outside, Pressel, Lemmons, and Pease proceeded to smoke from a pipe that belonged to Lemmons. At that time, Agent Sterling and Officer Williams smelled the odor of burnt marijuana. Later, Agent Sterling, Officer Williams, Pressel, Lemmons and Pease walked back into the bar. Officer Williams notified the Trotwood Police, and informed them that the search warrant was ready to be served.
At approximately 10:45 p.m., the Trotwood Police Officers and detectives entered Grills Tavern, properly identified themselves, served the search warrant, and conducted a full inspection of the bar. The inspection resulted in the seizure of drugs and drug paraphernalia, a box containing four boxes of tip tickets, an envelope containing $92, an envelope marked for gambling, a Cherry Master video electronic slot machine, $368 seized from the slot machine, one partial liter bottle of King George Scotch Whiskey found on the shelf that contained gnats, and a bottle of Budweiser beer found in an ice bin that was used to prepare drinks.
On June 21, 2000, two cases were presented before the Liquor Control Commission ("commission"). In case No. 883-00, appellant was charged with permitting and/or allowing gambling on the premises, and keeping the premises in an unsanitary condition. In case No. 884-00, appellant was charged with allowing trafficking in marijuana, permitting drug abuse, and permitting gambling. Appellant entered a plea of denial to the violations, but entered a stipulation to the investigator's report regarding the facts. (Tr. 4, 5.) In case No. 884-00, the Department of Liquor Control dismissed the drug charges. (Tr. 5.)
On July 31, 2000, the commission found appellant in violation of permitting and/or allowing gambling on the premises in violation of Ohio Adm. Code 4301:1-1-53, and keeping the premises in an unsanitary condition in violation of Ohio Adm. Code 4301:1-1-17. As a result, the commission revoked appellant's liquor license, effective August 21, 2000. On August 3, 2000, appellant filed an appeal to the Franklin County Court of Common Pleas, alleging that the commission's order was not supported by reliable, probative, and substantial evidence, and that the order was not in accordance with the law. On June 18, 2001, the trial court affirmed the decision of the commission. It is from this decision and judgment entry that appellant appeals, raising the following sole assignment of error:
 THE FRANKLIN COUNTY COMMON PLEAS COURT ERRED WHEN IT AFFIRMED THE ORDER OF THE LIQUOR CONTROL COMMISSION AND FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS IN ACCORDANCE WITH LAW.
Appellant has appealed, pursuant to R.C. 119.12. R.C. 119.12 provides the following standard of review for the common pleas court:
 The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. * * *
In Lorain City Bd. of Edn. v. State Emp. Relations Bd. (1988),40 Ohio St.3d 257, 260-261, the Ohio Supreme Court set forth the following standard of review for an appellate court in reviewing a judgment of the trial court which determines an administrative appeal:
 In reviewing an order of an administrative agency, an appellate court's role is more limited than that of a trial court reviewing the same order. It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only if the trial court has abused its discretion. An abuse of discretion `"* * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.'" State, ex rel. Commercial Lovelace Motor Freight, Inc., v. Lancaster (1986), 22 Ohio St.3d 191.193 * * *. Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. See Rohde v. Farmer (1970), 23 Ohio St.2d 82 * * *.
 The fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.
In Our Place, Inc. v Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570,571, the Ohio Supreme Court defined the evidence required by R.C. 119.12
as:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. [Footnotes omitted.]
Thus, this court's standard of review is limited to whether the trial court abused it discretion in finding the commission's order was supported by reliable, probative, and substantial evidence or that it was in accordance with law.
Appellant's main argument is that the revocation of the liquor license is a too severe penalty. Appellant contends that the order of the commission violates the excessive fines provisions of the United States and Ohio Constitutions, and that the commission abused its discretion by revoking her liquor license. Appellant argues that revoking her liquor license was the most serious penalty issued by the commission because such a sanction forced appellant out of business. Appellant contends that the gambling charges are typical violations and not unusual cases before the commission, and that the unsanitary charges gnats in the watered down liquor and the beer in the ice bin were not serious charges.
R.C. 4301.25 gives the commission the discretion to either suspend or revoke a liquor license when the permit holder violates any state liquor law. Once the commission properly determines there is a violation of the law, the commission has within its discretion the ability to impose various penalties, including revocation, and that decision cannot be disturbed on appeal. McCartney v. Liquor Control Comm. (June 22, 1995), Franklin App. No. 94APE-10-1576, unreported. The power of the Franklin County Court of Common Pleas to modify an order of the commission is limited to standards set forth in R.C. 119.12, and the court has no authority to modify a penalty by the commission if the commission's decision is supported by reliable, probative, and substantial evidence. Henry's Café, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233. Only where the trial court determines that the order is not supported by reliable, probative, and substantial evidence, will the court consider vacating, reversing, or modifying the order. Id. at 236.
In this case, the commission held that appellant violated Ohio Adm. Code4301:1-1-53, which provides:
 (B) No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of section 2915.01
of the Revised Code.
The boxes of tip tickets, along with the electronic slot machine that were confiscated from Grills Tavern during the search of the premises are considered gambling devices.[1] Appellant admitted at the hearing that she knew that gambling was taking place at the premises, and she allowed it to continue. (Tr. 12.)
The commission also determined that appellant violated Ohio Adm. Code4301:1-1-17(L), which provides that:
 All alcoholic beverages held or offered for sale shall be maintained in a potable condition. * * *
At the hearing, the Department of Liquor Control admitted into evidence the lab report from a chemist finding that the bottle of King George Scotch Whiskey confiscated during the search of the bar was diluted and contained gnats. (Tr. 6.)
While it appears that appellant's record may be free of prior violations, and while she expressed remorse and willingness to eliminate the activity at the bar, the commission's determination that appellant violated the state liquor laws gave rise to the commission's authority to revoke appellant's liquor license. R.C. 119.12. While the penalty imposed may seem arduous, we find that the record fully supports the judgment of the trial court that the decision of the commission was supported by reliable, probative, and substantial evidence and was in accordance with law. As such, we cannot vacate, reverse, or modify the sanction imposed. Henry's Café; McCartney, supra. Accordingly, we conclude that the trial court did not abuse its discretion in affirming the decision of the commission to revoke appellant's liquor license.
For the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.
[1] R.C. 2915.01(F) defines "Gambling devices" as: "(1) A book, totalizer, or other equipment for recording bets; (2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance, except a charitable bingo game, or evidencing a bet; (3) A deck of cards, dice, gaming table, roulette wheel, slot machine, punch board, or other apparatus designed for use in connection with a game of chance; (4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes."